# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TYRONE HOLMES, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )     04 C 8311 |
| | ) |
| | )     **Judge Ronald A. Guzmán** |
| GUY D. PIERCE,[1] | ) |
| | ) |
|     Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Tyrone Holmes' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 that seeks to vacate his convictions for first degree murder and criminal sexual assault. For the reasons provided in this Memorandum Opinion and Order, the Court denies the petition.

## Facts

In 1989, Holmes was convicted of first degree murder and criminal sexual assault of Lajauina Camel. (Gov't Ex. A, *People v. Holmes*, 601 N.E.2d 985, 986 (Ill. App. Ct. 1992).) Holmes appealed his convictions and sentence. He argued that: (1) he was deprived of his right to a speedy trial, in violation of the Illinois statute and the Sixth Amendment to the U.S. Constitution; (2) the trial court erred in finding that the State had shown that certain injuries found on the victim's body were bite marks inflicted by Holmes because Holmes had impeached the testimony of the State's bite-mark experts and the court erred in relying upon opinion

---

[1]The Court substitutes Joseph Mathy, the current warden of the Pontiac Correctional Center, for Guy D. Pierce, whom the parties named as the Respondent in previous filings.

testimony regarding muddy shoe prints that had been stricken from the record; (3) the State failed to prove his guilt beyond a reasonable doubt as to criminal sexual assault; and (4) his sentence was excessive in light of his steady employment record and other mitigating factors. (*Id.* at 989-99.)

On September 8, 1992, the appellate court affirmed Holmes' convictions and sentence. (*See generally id.*)  Holmes filed a petition for leave to appeal to the Illinois Supreme Court that raised the same issues that he raised on direct appeal.  (Gov't Ex. B, Pet. Leave Appeal 8-34.) On October 6, 1993, the Illinois Supreme Court denied the petition for leave to appeal.  (Gov't Ex. C, *People v. Holmes*, No. 75594, slip op. at 1 (Oct. 6, 1993).)

On November 5, 1993, Holmes filed the first of five petitions for relief pursuant to the Illinois Post-Conviction Hearing Act, 725 Ill. Comp. Stat. 5/122-1 *et seq.*, and/or 735 Ill. Comp. Stat 5/2-1401 for relief from judgment, arguing that:  (1) trial counsel was ineffective for failing to challenge Holmes' arrest; (2) trial counsel was ineffective for failing to present a witness who would testify that Holmes was not the last person in the building where the victim was found; (3) trial counsel was ineffective for being absent during the bite mark expert's examination of Holmes; (4) Holmes was denied due process of law because the state-ordered tests of his blood and saliva were never conducted; (5) he was denied an impartial judge because the judge was aware of Holmes' prior conviction for rape; (6) trial counsel was ineffective for failing to impeach Jacqueline Wilson's testimony; (7) Detective Vucko's testimony regarding a police report was inadmissible hearsay because he did not author the report and Holmes was deprived of due process because he was unable to cross-examine Detective Summerville, the author of the report; (8) he was denied due process of law when the court permitted Dr. Kenney to remain in the courtroom in contravention of the court's earlier order excluding witnesses from the

courtroom; and (9) prosecutorial misconduct.  (Gov't Ex. D, Pet. Post-Conviction Relief; Gov't Ex. E, Supplemental Pet. Post-Conviction Relief.)  In addition, the Public Defender also filed a supplemental post-conviction petition to compel genetic marker testing.  (Gov't Ex. F, Pet. Compel Genetic Marker Testing.)  The State moved to dismiss Holmes' pro se post-conviction petition, his pro se supplemental post-conviction petition and the Public Defender's supplemental petition, which were treated collectively as one petition.  (*See* Gov't Ex. I, *People v. Holmes*, No. 1-96-1046, slip op. (June 5, 1998).)  On February 1, 1996, the trial court granted the State's motion to dismiss the petition because Holmes had not established a denial of effective assistance of counsel or due process.  (*See id.*)

Holmes appealed the dismissal of his first post-conviction petition.  (Gov't Ex K, Pet'r-Appellant's Br. 4.)  However, he raised only one issue:  Holmes was entitled to have genetic marker testing conducted where DNA testing was not available at the time of his trial; (2) the evidence was impounded and is available for testing; and (3) DNA testing could conclusively exclude petitioner as the offender.  (*Id.*)   On June 5, 1998, the appellate court affirmed the dismissal of Holmes' petition.  (*See* Gov't Ex. I, *People v. Holmes*, No. 1-96-1046, slip op. (June 5, 1998).)  Holmes did not request leave to appeal to the Illinois Supreme Court.  (Gov't Ex. M, Letter from J. Hornyak to C. Hulfachor of 3/15/05 (stating that records do not show petition for leave to appeal to the Illinois Supreme Court was filed).)

On April 21, 1999, Holmes moved for forensic testing that was not available at trial.  (Gov't Ex. FF, Updated Certified Stmt. Conviction/Disposition.)  On May 13, 1999, the trial court granted the motion.  (*Id.*)  On October 14, 1999 and November 1, 1999, Cellmark Diagnostics issued reports analyzing the victim's vaginal swab for the presence of semen and

3

spermatazoa and Holmes' coat, pants and boots for the presence of blood. (Gov't Ex. N, Pet. Post-Conviction Relief, Exs. B & C.)

On April 19, 2000, Holmes filed a second petition for post-conviction relief with aid of counsel, as well as a motion for relief from judgment pursuant to 735 Ill. Comp. Stat. 5/2-1401. (Gov't Ex. N, Pet. Post-Conviction Relief.) In both, Holmes argued that he had newly discovered evidence (obtained from court-ordered testing of the evidence) that serologist Pamela Fish testified falsely regarding blood stains on Holmes' pants, coat and boots. (*Id.*) On November 27, 2000, the court dismissed both the post-conviction petition and the motion for relief from judgment. (Gov't Ex. P, H'rg Tr. of 11/27/00.) Holmes' appeal of his second petition for post-conviction relief was consolidated with his appeal of his third petition for post-conviction relief. (Gov't Ex. S, *People v. Holmes*, Nos. 1-01-0496 and 1-01-3210, slip op. at 2 (Mar. 19, 2003).) However, on appeal, Holmes abandoned the issues raised in his second petition for post-conviction. (*See id.*)

On April 13, 2001, Holmes filed a third petition for post-conviction relief. (Gov't Ex. Q, Pet. Post-Conviction Relief.) He argued that, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), his Sixth and Fourteenth Amendment rights were violated when the trial court sentenced him to an extended term sentence of natural life for "brutal and heinous behavior indicative of wanton cruelty," a factor that was not proven to a jury beyond a reasonable doubt. (*See id.* 2.) On July 6, 2001, the trial court dismissed the third petition for post-conviction relief. (Gov't Ex. R, People v. Holmes, No. 87-CR-6274, slip op. at 1 (July 5, 2001).) Holmes appealed the dismissal and raised the same issue on appeal. (Gov't Ex. S, *People v. Holmes*, Nos. 1-01-0496 and 1-01-3210, slip op. at 2-3 (Mar. 19, 2003).) On March 19, 2003, in the consolidated appeal, the appellate court affirmed the dismissal of Holmes' second and third petitions for post-

conviction relief.  (*Id.* at 3.)  The appellate court held that *Apprendi* did not apply retroactively. (*Id.*)  Holmes filed a petition for leave to appeal to the Illinois Supreme Court.  (Gov't Ex. W, Pet. Leave Appeal.)  On October 7, 2003, the Illinois Supreme Court denied the petition for leave to appeal.  (Gov't Ex. X, People v. Holmes, No. 96116, slip op. 1 (Oct. 7, 2003).)

On July 1, 2002, Holmes filed a fourth petition for post-conviction relief.  (*See* Gov't Ex. Y, People v. Holmes, No. 87-CR-6274, slip op. 1 (Aug. 20, 2002).)  On August, 20, 2002, the trial court dismissed the fourth petition for post-conviction relief because the issues raised were barred by res judicata, waived or frivolous.  (*Id.*)  Holmes appealed the dismissal, arguing that (1) the State knowingly introduced false testimony at trial and withheld exculpatory evidence; (2) both his trial attorney and the trial court erroneously believed he was eligible for the death penalty; and (3) his appellate counsel was ineffective for failing to raise these issues on direct appeal.  (*Id.* 1-2.)  The appellate court affirmed the dismissal of the fourth petition for post-conviction relief and held that the issues raised were waived.   (Gov't Ex. Z, *People v. Holmes*, No. 1-02-3303, slip op. 7-11 (June 16, 2004).)  Holmes filed a petition for leave to appeal to the Illinois Supreme Court and argued that the fundamental miscarriage of justice exception to the waiver rule should apply to permit Holmes' fourth petition for post-conviction relief where:  (1) due to constitutional error, petitioner was wrongfully found to be "death eligible," but the death sentence was not imposed; (2) he has a free-standing claim of actual innocence based upon the State's failure to disclose serologist Pamela Fish's handwritten notes and her false trial testimony; and (3) his life sentence was unlawful, even though the court found "brutal and heinous behavior indicative of wanton cruelty," because trial counsel and the court erroneously believed he was eligible for the death penalty.  (Gov't Ex. DD, Pet. Leave Appeal 3.)  On

November 24, 2004, the Illinois Supreme Court denied the petition for leave to appeal. (Gov't Ex. EE, *People v. Holmes*, No. 99013, slip op. 1 (Nov. 24, 2004).)

In December 2004, Holmes filed a petition for relief from judgment pursuant to 735 Ill. Comp. Stat. 5/2-1401. (Gov't Ex. GG, Pet. Relief J.) He argued that his life sentence is void due to the following: (1) criminal sexual assault is not listed as an aggravating factor whereby a defendant can be found death-eligible; and (2) although Holmes was sentenced to natural life, the trial court's erroneous belief that Holmes was eligible for the death penalty requires re-sentencing because the trial judge had the wrong sentencing range in mind. (*Id.* 1-7.) On January 25, 2005, the trial court dismissed the petition as frivolous. (Gov't Ex. FF, Updated Certified Stmt. Conviction/Disposition.) On February 17, 2005, Holmes moved to reconsider the motion, and on March 31, 2005, the court denied the motion to reconsider. (*Id.*)

On December 16, 2004, Holmes filed a pro se petition for habeas corpus. The petition argues that: (1) Holmes is actually innocent based on newly-discovered evidence that the State failed to turn over the handwritten notes of serologist Pamela Fish regarding preliminary test results for the presence of blood on petitioner's clothing; (2) the same conduct constitutes a *Brady* violation; (3) the prosecutor knowingly used the false testimony of Pamela Fish; (4) his trial counsel provided ineffective assistance by failing to convince the court that Holmes was not death-eligible, and thus not eligible for a natural life sentence; (5) the trial court erred when it found Holmes death-eligible; (6) his appellate counsel provided ineffective assistance of counsel by failing to raise the following issues on direct appeal: the court's finding of death eligibility, the prosecutor's failure to provide notice of the intention to seek the death penalty, the prosecutor's misrepresentation of the charged felony at the sentencing hearing, the court's

6

misunderstanding of state sentencing law and the capital eligibility hearing itself; and (7) his post-conviction counsel provided ineffective assistance of counsel. (Pet. Writ Habeas Corpus.)

On April 24, 2006, Holmes, with the aid of appointed counsel, amended his petition for writ of habeas corpus. The amended petition raises the following claims: (1) the State failed to turn over the handwritten notes of serologist Pamela Fish, the prosecution used Fish's perjured testimony and Holmes is actually innocent; (2) bite-mark testimony should not have been admitted at trial; and (3) once the blood evidence, bite-mark evidence and boot-print evidence is excluded, there is insufficient evidence to convict Holmes. (Am. Pet. Writ Habeas Corpus.)

## Discussion

The Court can reach the merits of Holmes' claims only if he fairly presented them to the state courts for resolution and exhausted all available state-court remedies. *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996). Holmes exhausted his state-court remedies only if he gave "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "[F]or a constitutional claim to be fairly presented to a state court, both the operative facts and the 'controlling legal principles' must be submitted to that court." *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992) (quoting *Picard v. Connor*, 404 U.S. 270, 277 (1971)).

Further, a federal court is precluded from reviewing a claim if the state court disposed of it by "rest[ing] on a state law ground that is independent of the federal question and adequate to

7

support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "This rule applies whether the state law ground is substantive or procedural." *Id.*

In addition, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Because "federal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), any claim that merely argues errors of state law is noncognizable on federal habeas review, *see United States ex rel. Lopez v. Uchtman*, No. 05 C 927, 2007 WL 273651, at *2 (N.D. Ill. Jan. 24, 2007).

Respondent argues that all three of Holmes' claims are procedurally defaulted or noncognizable.[2] The Court addresses each claim in turn.

In claim 1, Holmes contends that (a) the State failed to turn over the handwritten notes of Pamela Fish, the serologist who tested his clothes for blood, (b) the prosecution used false testimony from Pamela Fish during trial, and (c) he is actually innocent. With regard to the second issue in claim 1, *i.e.*, the prosecution used false testimony from Pamela Fish during trial, Holmes raised this issue for the first time in his second post-conviction petition. (Gov't Ex. N, Pet. Post-Conviction Relief.) However, he abandoned it on appeal and in his petition for leave to appeal to the Illinois Supreme Court. (*See* Gov't Ex. S, *People v. Holmes*, Nos. 1-01-0496 and 1-01-3210, slip op. at 2 (Mar. 19, 2003); Gov't Ex. W, Pet. Leave Appeal.) Although Holmes also raised this issue, as well as the first issue of claim 1, *i.e.*, the State failed to turn over the handwritten notes of Pamela Fish, in his fourth post-conviction petition, the appellate court

---

[2]In addition, because the Court holds that Holmes' habeas claims are either noncognizable or procedurally defaulted and he cannot establish that which is required to excuse the default, the Court need not address the State's arguments regarding whether his claims are timely.

rejected both based on the independent and adequate state law ground of waiver when it held that Holmes provided no reason for his failing to raise these issues in his third post-conviction petition filed in April 2001. (*See* Gov't Ex. Z, *People v. Holmes*, No. 1-02-3303, slip op. 7 (June 16, 2004) (citing 725 Ill. Comp. Stat. 5/122-3, which states "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived"); *see id.* (holding that these issues were waived and Holmes failed to establish cause and prejudice to excuse the waiver).) Thus, the first two issues in claim 1 are procedurally defaulted. As for the third issue in claim 1, *i.e.*, that Holmes is actually innocent, this is not an independent ground for federal habeas relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."). The Court will thus address his actual innocence argument within the fundamental-miscarriage-of-justice requirement below to determine whether it excuses the procedural default of Holmes' habeas claims.

In claim 2, Holmes argues that the bite-mark testimony should not have been admitted at trial. The State argues that this is a noncognizable claim because it rests on a state court evidentiary ruling rather than on a violation of the Constitution or laws of the United States. "Unless the petitioner demonstrates that a specific constitutional right has been violated, a federal court can issue a writ of habeas corpus only when a state evidentiary ruling violates the defendant's due process rights by denying him a fundamentally fair trial." *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990) (quotation omitted). Neither Holmes' original pro se habeas petition nor his amended petition for writ of habeas corpus argues that the admission of bite-

9

mark testimony resulted in a denial of his right to due process of law.[3] Accordingly, the Court agrees with the State that claim 2 is not a cognizable claim under federal habeas review.

In the alternative, even if the Court were to hold that this claim is cognizable and not waived, which it does not, Holmes has nonetheless procedurally defaulted this claim. On direct appeal, Holmes argued that the trial court erred in finding that the State had shown that certain injuries found on the victim's body were bite marks inflicted by him because he impeached the testimony of the State's expert. (Gov't Ex. A, *People v. Holmes*, 601 N.E.2d at 989-99.) In so arguing, Holmes framed the bite-mark issue as an evidentiary, not a due process, issue,[4] and therefore he cannot raise it as a due process issue for the first time in his habeas petition. *See Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995).

In claim 3, Holmes argues that if the bite-mark, blood and boot print evidence is excluded, there is insufficient evidence to convict him. Although Holmes states that he raised individual arguments regarding the bite-mark, blood and boot print evidence in state court, Holmes concedes that he did not raise the due process issue regarding the cumulative effect of the inclusion of all such evidence on direct appeal or in his post-conviction proceedings. (Am. Pet.

---

[3]After the State argued that claim 2 was not cognizable in its answer to the amended petition, Holmes attempted to re-characterize the claim as one based on a denial of due process for the first time in his reply brief. "It is well settled that issues raised for the first time in a reply brief are deemed waived." *Nelson v. La Crosse County Dist. Atty.*, 301 F.3d 820, 836 (7th Cir. 2002). Therefore, the Court deems the due process argument waived.

[4]The appellate court held that the credibility of the bite-mark testimony was a matter for the trier of fact and where the expert testimony was conflicting, it would not substitute its judgment for the trier of fact. (Gov't Ex. A, *People v. Holmes*, 601 N.E.2d at 993.)

Writ Habeas Corpus 15-16.) Therefore, the Court deems this issue procedurally defaulted as well.

In sum, the following issues are procedurally defaulted because Holmes did not fairly present them to the state courts for resolution: (1) the State failed to turn over the handwritten notes of Pamela Fish, the serologist who tested his clothes for blood; (2) the prosecution used false testimony from Pamela Fish during trial; and (3) if the bite-mark, blood and boot print evidence is excluded, there is insufficient evidence to convict him.[5] With regard to the third issue of Claim 1 and Claim 2, the Court denies the petition as to these claims because they are noncognizable on federal habeas review.

With regard to the procedurally defaulted claims, this does not end the analysis. Procedural default may be overlooked if the petitioner can show good cause for the default and actual prejudice resulting therefrom, or demonstrate that the failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

"Good cause for default is limited to an external objective impediment that prevented the petitioner from making the claim, such as interference by state officials or unavailability of a factual or legal basis for the claim at the time of filing the habeas petition." *United States ex rel. Williams v. Winters*, No. 01 C 4664, 2004 WL 1588269, at *3 (N.D. Ill. June 22, 2001); *see Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Holmes argues that the ineffective assistance of post-conviction counsel prevented him from raising on appeal from the denial of his second post-conviction petition the arguments that:

---

[5]The Court has, as an alternative ground for denying the petition, stated that Claim 2 is also procedurally defaulted, and thus the analysis herein regarding Holmes' failure to excuse the default would apply equally to Claim 2 were the Court to have held that Claim 2 was a cognizable claim.

11

(1) the State failed to turn over the handwritten notes of Pamela Fish in his third post-conviction petition and (2) the prosecution used false testimony from Pamela Fish during trial. "Because there is no right to effective assistance of counsel in post-conviction hearings, any attorney error that led to the default of his claims in state court cannot constitute cause to excuse the default in federal habeas." *James v. Chambers*, No. 06 C 2349, 2008 WL 5142180, at *7 (N.D. Ill. Dec. 4, 2008) (quotation omitted); *see Coleman*, 501 U.S. at 752; *Harris v. McAdory*, 334 F.3d 665, 668 (7th Cir. 2003). Accordingly, any argument regarding ineffective assistance of post-conviction counsel does not establish cause to excuse the procedural default.

Holmes provides the following cause for the procedural default of the claim that the cumulative effect of the admission of the bite-mark, blood and boot print evidence denied him due process: the issue "became relevant only when the blood evidence, the bite mark evidence and the boot print evidence have been excluded from the trial." (Am. Pet. Habeas Corpus 15-16.) This particular reason is paradoxical and clearly does not constitute cause. Further, Holmes argues that he did not receive Fish's laboratory notes from the state until May 2000. However, to the extent that Holmes blames his post-conviction counsel for failing to raise the claim predicated on Fish's notes in April 2001 in his third post-conviction petition, as discussed above, Holmes cannot establish cause for the default. In addition, although Holmes argues that he did not learn of the investigations into the unreliability of bite-mark evidence until October 2004, this does not explain why he did not raise this argument in his fifth post-conviction petition.

For these reasons, Holmes has failed to establish cause for the procedural default of his claims. Because he must show both cause *and* prejudice to avoid the dismissal of his petition on procedural default grounds, the Court need not reach the issue of prejudice. *Buelow v. Dickey*, 847 F.2d 420, 425 (7th Cir. 1988) ("The 'cause and prejudice' test . . . is conjunctive: A

petitioner's inability to demonstrate either prong results in dismissal of his habeas petition before the merits of his claims can be reached.")

Lastly, Holmes has not established that a failure to consider his procedurally defaulted claims will result in a fundamental miscarriage of justice. To show a fundamental miscarriage of justice, a petitioner must establish that a constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *see Dretke v. Haley*, 541 U.S. 386, 393 n.2 (2004). To support a claim of actual innocence, a habeas petitioner must present "new reliable evidence . . . that was not presented at trial" and must establish that "it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003) (quotations omitted).

Holmes argues that the following evidence establishes his actual innocence: (1) Fish's laboratory notes (Pet'r Ex. 2, P. Fish's Handwritten Lab Notes); (2) the Cellmark Diagnostics testing of the coat, pants, boots and vaginal swab (Gov't Ex. N, Pet. Post-Conviction Relief, Ex. B, Cellmark Report of Lab. Examination of 10/14/1999 at C23-C24; *id.*, Ex. C, Cellmark Report of Lab. Examination of 11/1/1999 at C26); (3) an October 19, 2004 Chicago Tribune article highlighting the ambiguity of bite-mark testimony and reporting that Dr. John Kenney, one of the State's two bite-mark experts in Holmes' case, in connection with an unrelated case in which he testified as a bite-mark expert, expressed concern that he might have played a role in a wrongful conviction in that case. (Pet'r. Ex. 9, F. McRoberts and S. Mills, *From the Start a Faulty Science*, CHI. TRIB., Oct. 19, 2004.)

First, with regard to Fish's handwritten laboratory notes, they do not establish Holmes' actual innocence because they do not preclude a finding of guilt by a reasonable juror. According to Fish's testimony, the blood present on several articles of clothing was identifiable

13

through chemical testing. (Pet'r Ex. 3, Tr. P. Fish's Trial Testimony.) She testified that she conducted a chemical test by rubbing a swab over various parts of the clothing and applying chemicals to the swab to determine whether a color reaction occurs to indicate that blood is present on that area of the garment. (*Id.* at 142.) She then testified that the chemical testing indicated that there was blood present on the trench coat, the pair of pants and the pair of boots near the laces.[6] (*Id.*) She also testified that she did not do any further testing on the clothing relative to the blood present on the clothing because there was an insufficient amount of blood for her to do any further testing. (*Id.* at 143.) Fish's handwritten notes indicate as to the pants only: "no stains identifiable as blood," "several reddish brown stains," and "neg PT." (Pet'r Ex. 2, P. Fish's Handwritten Lab Notes 1.) It is unclear whether the notation "no stains identifiable as blood" is due to a visual inspection or testing. However, as to the coat, Fish's notes do not indicate the result of the preliminary testing, merely that the coat was tested. (*Id.*) With regard to the pair of boots, the handwritten notes indicate "pos PT by laces." (*Id.*) Even if Fish's handwritten laboratory notes had been made available to Holmes prior to trial, at best, the notes provide only impeachment evidence as to the pants, but not to the coat and boots, and accordingly, there is not a reasonable probability that the result of the trial would have been different. *See United States v. Bagley*, 473 U.S. 667, 682 (1985) (stating that a *Brady* violation only occurs if material evidence is withheld, *i.e.*, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"). Further, given the following evidence presented at trial, Holmes has not established a probability that no reasonable juror would have convicted him in light of Fish's handwritten

---

[6]Fish did not identify Holmes or the victim as the source of the blood and merely testified that human blood was present. (*See id.*)

notes: (1) Holmes had changed his account of when he had last seen the victim; (2) Holmes' testimony about his having sexual intercourse with a girlfriend that evening was contradicted by the girlfriend's testimony; (3) Pam Fish testified that the swab of the victim's vagina showed the presence of semen; (4) an eyewitness testified that at 5:00 a.m., she saw Holmes in the stairwell of her apartment building with the victim, who was crying and had a fresh bruise on her chin; (5) that eyewitness also testified that she tried to speak to the victim but was prevented from doing so by Holmes who took her by the arm and walked her outside; (6) a different witness heard a thumping sound at approximately 5:30 a.m. and discovered the victim's body at 6:00 a.m. in the same apartment building's stairwell; (7) a bottle of liquor, which had on it defendant's fingerprint, another print not suitable for comparison and third print that was suitable for comparison but never matched, was found a few inches from her foot; and (8) two State bite-mark experts concluded, and two defense bite-mark experts refuted, that an injury on the right side of the victim's jaw was consistent with Holmes' lower teeth, an injury to the left side of the victim's jaw was consistent with defendant's upper teeth and the injury to the victim's right clavicle area was consistent with the right side of Holmes upper teeth. Fish's handwritten laboratory notes, when reviewed in and of themselves or in conjunction with all of the other evidence provided in record, including other new evidence, simply does not preclude a finding of guilt by a reasonable juror.

Next, Holmes argues that the Cellmark Diagnostics testing (performed ten years after trial) of the coat, pants, boots and vaginal swab of the victim establishes his actual innocence. (*See* Gov't Ex. N, Pet. Post-Conviction Relief, Ex. B, Cellmark Report of Lab. Exam. of 10/14/1999 at C23-C24.) First, the October 14, 1999 Cellmark report corroborates Fish's testimony that semen was present on the vaginal swab. (*Id.*) Accordingly, this new evidence does not tend to

establish actual innocence. Second, the same Cellmark report states that, contrary to Fish's testimony that only semen was present, spermatazoa was also present on the vaginal swab. (*Id.*) However, that contradiction is tempered by the November 1, 1999 Cellmark report in which it concludes that Holmes "cannot be excluded as the source of the DNA obtained from the sperm fraction of the vaginal swab." (Gov't Ex. N, Pet. Post-Conviction Relief, Ex. C, Cellmark Report of Lab. Examination of 11/1/1999 at C26.) Thus, this new evidence does not establish Holmes' actual innocence either. Third, the October 14, 1999 Cellmark report also states that tests performed on numerous cuttings from the trousers and coat and dry and wet rubbings from the boot did not show the presence of blood. (Gov't Ex. N, Pet. Post-Conviction Relief, Ex. B, Cellmark Report of Lab. Exam. of 10/14/1999 at C23.) These results are not surprising given that Fish had testified that she could not conduct any further tests on any of the items of clothing due to the insufficient amounts of blood present. (Gov't Ex. A, *People v. Holmes*, 601 N.E.2d at 989.) Therefore, the fact that Cellmark's testing of the items for the presence of blood produced negative results does not establish that no blood ever existed on the boots and coat. In sum, given all of the evidence in the habeas record (including new evidence), the Cellmark Diagnostics test results do not preclude a finding of guilt by a reasonable juror.

Finally, Holmes relies on an October 19, 2004 Chicago Tribune article questioning the reliability of bite-mark testimony and reporting that Dr. John Kenney, one of the State's bite-mark experts in Holmes' case, in connection with an unrelated case in which he testified as a bite-mark expert, expressed concern that he might have played a role in a wrongful conviction. In the article, Dr. Kenney is quoted as saying "You get pushed a little bit by prosecutors, and sometimes you say OK to get them to shut up" and with regard to the unrelated case, "I allowed myself to be pushed." (Pet'r. Ex. 9, F. McRoberts and S. Mills, *From the Start a Faulty Science*,

16

CHI. TRIB., Oct. 19, 2004.) After considering the contents of the Chicago Tribune article by itself or with the other new evidence, the Court holds that it does not provide a basis for a colorable claim of factual innocence. First, the article and Dr. Kenney's quotes do not address Holmes' case. (*See id.*) Second, in this case, Dr. Kenney did not unequivocally testify that the bite marks were Holmes', but rather he identified similarities between the marks and certain of defendant's teeth. (Gov't Ex. A, *People v. Holmes*, 601 N.E.2d at 992.) Third, Dr. Kenney was not the only bite-mark expert to testify. The State's other bite-mark expert, Dr. Johnson, also testified that his findings were consistent with Dr. Kenney's final report. Given that Drs. Kenney and Johnson's testimony was sharply contradicted by the defense's two bite-mark experts, Drs. Pierce and Smith[7] and defendant argues that the State's bite-mark experts were discredited on cross-examination, it is difficult to discern how Dr. Kenney's quotes or the newspaper article as a whole sheds any new light on the issue of the bite-mark evidence because it is clear that the experts' opinions differed wildly. Accordingly, the Court holds that Holmes has failed to establish that it is more likely than not that no reasonable juror would have convicted him in light of the Chicago Tribune article on bite-mark evidence alone or in combination with the other new evidence.

---

[7]Dr. Smith testified that the injuries on the victim were either not bite marks at all or if they were bite marks, it would have been impossible for Holmes to have inflicted them. (*Id.* at 993.)

17

## **Conclusion**

For the foregoing reasons, the Court denies Holmes' petition for writ of habeas corpus.

This case is hereby terminated.

**SO ORDERED**

January 7, 2009

**ENTERED:**

*Ronald A. Guzman*

_____
**HON. RONALD A. GUZMAN
U.S. District Court Judge**